# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **TAMEKA TURNER,** | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| | § | |
| | § | |
| | § | |
| **CITY OF DALLAS,** | § | |
|     Defendant | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**COMES NOW**, Plaintiff, Tameka Turner (hereinafter "Plaintiff"), and complains of Defendant, City of Dallas (hereinafter "Defendant"), and would respectfully show unto the Court as follows:

### I.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§1331 and 1343. In addition, Plaintiff invokes this Court's jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000-e, et seq. (hereinafter "Title VII").

2. Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## II.

## PARTIES

3. Plaintiff is a female, black/African American citizen of the United States and a resident of Dallas County, Texas. At all times relevant hereto, Plaintiff was an employee of Defendant. Plaintiff has been subjected to unlawful employment practices committed in Dallas County, Texas by employees and agents of the Defendant.

4. Defendant is a municipal corporation organized and existing as a political subdivision of the State of Texas. Defendant may be noticed of this lawsuit by serving the City Secretary, Bilierae Johnson, 1500 Marilla Street, Room 5 D South, Dallas, Texas 75201.

## III.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On or about December 18, 2021, Plaintiff filed a charge of employment discrimination against Defendant with the Dallas District Office of the Equal Employment Opportunity Commission ("EEOC") within 300 days of the last discriminatory act. Any allegations in this action which pertain to events that occurred after 300 days of the last discriminatory act pertain to allegations of continuing violation.

6. Plaintiff received a "Notice of Right to Sue" concerning the charge on December 23, 2022, entitling her to institute a civil action within 90 days of the date of receipt of said notice. This action is timely filed.

## IV.

## **FACTS AND CAUSES OF ACTION**

7. This action is authorized and instituted pursuant to Title VII. This is a legal proceeding for legal and/or equitable relief available to secure the rights of the Plaintiff under these statutes.

8. Beginning on or about May 2021, and continuing through November 16, 2021, Plaintiff was repeatedly subjected to discrimination based on race, gender, retaliation, harassment and hostile work environment under Title VII.

9. Plaintiff was employed with Defendant from approximately May 24, 2021 through November 16, 2021. While employed by Defendant, Plaintiff's job title was a Truck Driver II.

10. On or about July 7, 2021, Plaintiff was at a work site putting poles in the ground. Plaintiff asked her co-worker Charles what was the purpose of shaking the pole. Charles immediately started yelling at Plaintiff. Plaintiff asked Charles why he was yelling and he replied: "because you act like you don't f****** and you are just in the way." Plaintiff asked her co-worker Phil which crew leader she needed to speak with about how Charles was yelling at her and cursing at her. Charles then stated: "You're always telling and my seniority will get you moved before anyone will bother me." Charles also said: "I'm going to show you what seniority does. I'm going to have the team lead put you're a** with Lalo's group so that Lalo can work the s*** out of you."

PLAINTIFF'S ORIGINAL COMPLAINT

11. Afterward, Plaintiff was sent to the office to talk with Supervisor Nino about the incident that happened that morning with Charles. Nino had Plaintiff write a statement about the incident that occurred on that day. The statement was given to Nino and Plaintiff went back to work.

12. On or about July 8, 2021, Charles told Plaintiff that Nino was sending Plaintiff to Lalo's group. Nino instructed Plaintiff to ride with Lalo to direct the traffic, which Plaintiff felt was retaliation and a slap in the face, because Nino did exactly what Charles had warned Plaintiff was going to happen.

13. While sitting in the truck later that morning, Lalo came to the truck yelling at Plaintiff and asking her why she was sitting in the truck. Plaintiff explained to Lalo that she was waiting on her co-worker. Plaintiff stated that Nino instructed her to ride with a co-worker to direct traffic. Plaintiff told Lalo that her co-worker did not make her aware that he needed help with anything.

14. Plaintiff then got out of the truck and asked her co-worker if he needed help, to which he replied: "no," so Plaintiff got back inside of the truck. Lalo then came and told Plaintiff to go ahead and grab her things and go see Nino. Once Plaintiff got back into the office, Nino asked her what happened. Plaintiff told him that she did not know what happened and that Lalo just came to the truck yelling at her. Nino told Plaintiff to go back and ride with her co-worker. Nino then instructed Plaintiff that if her co-worker got out of the truck that she needed to get out as well. Plaintiff complied.

PLAINTIFF'S ORIGINAL COMPLAINT

15. Plaintiff went back outside to the yard and the crew had left her without notice. Plaintiff went back into the office to inform Nino that the crew had already left. Plaintiff asked Nino if he would like to send her home for the day since the crew had left and there was no work. Nino replied: "you can go home, but you will not get paid for today," so Plaintiff went home.

16. On or about July 9, 2021, Plaintiff arrived to work. Nino came to her and said that Marie in Human Resources ("HR") needed to speak with her. Plaintiff asked Nino what it was about and he said that it was about yesterday. When Plaintiff got to HR's office, Nino and Marie began conducting the meeting. Marie asked Plaintiff what happened yesterday, and Plaintiff explained to her what happened.

17. Marie told Plaintiff that she could terminate her for walking off the job, but Plaintiff told Marie that she did not walk off the job. Marie also stated that Charles would be dealt with, but that if she walked off the job again it would not be tolerated. Marie also told Plaintiff that being the only female on an all-male job will cause her to get the short end of the stick.

18. On or about August 5, 2021, Plaintiff and co-workers Phil and Randy were cutting down trees in a small area. Charles came over to the area where Plaintiff was and called her a fat slouchy b**** and other derogatory, degrading names. Charles told Plaintiff that he was going to make her lose her job that day. Charles was directly in Plaintiff's face and she felt threatened. Plaintiff told Charles that if he put his hands on her, she was going to call the police

PLAINTIFF'S ORIGINAL COMPLAINT

and that he would go to jail. Charles was so aggressive that Randy had to step in front of Charles to keep him from being so close to my face.

19. Plaintiff immediately called Brister to inform him of what was taking place at the time. Brister told Plaintiff to have Phil call him.  After Phil got off the phone with Brister, Phil instructed Plaintiff to sit in the truck until he was loaded for the landfill while Charles and the rest of the crew finished up at the worksite.  While Plaintiff was in the truck, she made a complaint against Charles with ethics and HR.  That evening when Plaintiff arrived back at the office, Brister had a meeting with both Plaintiff and Charles.

20. Brister said that there was no need to hear either side of their stories or try to figure out who said what. Plaintiff and Charles were told to stay to themselves and do their jobs, and if they could not communicate to get a job done then they would have to be micromanaged. Brister stated that he did not want to have to come and watch over them and asked that whatever the problem was to leave it outside of work. Brister said that everyone knows that Charles "has got a mouth," and Charles agreed.

21. Brister told Charles that he had spoken to him before and that he had already received a verbal and the next step for him would be a write up. Brister told Plaintiff that she cannot afford to get a write-up or negative comments, because she was still on probation.

22. After these incidents, Plaintiff suffered retaliation based on her complaints to ethics and human resources for all of the disrespectful remarks and harassment from Charles. Charles' sexist and offensive remarks created a hostile work environment. Furthermore,

PLAINTIFF'S ORIGINAL COMPLAINT

Defendant did not remedy Charles' actions. Defendant also disciplined men less harshly than Plaintiff, the only woman on the job. For instance, Plaintiff and another male co-worker were involved in separate car accidents while on the job. Plaintiff had a very minor wreck, but got investigated. The male co-worker had a major wreck and did not get investigated.

23. On or about November 16, 2021, Defendant terminated Plaintiff's employment. Defendant's proffered business reason for Plaintiff's discrimination was mere pretext to sanitize the termination.

24. On information and belief, Defendant followed a policy and practice of retaliation against Plaintiff based on Plaintiff's complaints to ethics and human resources about Charles' sexist and offensive remarks. These retaliatory practices and policies include, but are not limited to, retaliating against employees who make formal complaints, in violation of Title VII.

25. On information and belief, Defendant followed a policy and practice of discrimination against Plaintiff because of her race, black/African American, and/or gender, female, in violation of Title VII. The discriminatory practices and policies include, but are not limited to, discriminating against Plaintiff in the terms, conditions, and privileges of employment based on her race and gender.

26. Plaintiff was subjected to a hostile work environment and adverse employment actions by Defendant based on Charles' nearly daily sexist, offensive remarks and hostile threats.

27. Plaintiff has suffered compensatory damages as the direct result of Defendant's discriminatory and retaliatory treatment of her. Plaintiff would further show that Defendant's conduct was done willfully and with malice and that she is entitled to liquidated and exemplary damages.

PLAINTIFF'S ORIGINAL COMPLAINT

28. Defendant's conduct toward Plaintiff caused her severe emotional distress, pain and suffering, for which Plaintiff seeks compensatory damages.

29. The amount of damages which Plaintiff seeks herein exceeds the jurisdictional minimum of this Court.

30. All conditions precedent to the filing of this action have occurred or have been fulfilled.

## V.

## DAMAGES

31. Plaintiff seeks statutory damages, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and post judgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled pursuant to Title VII.

32. Plaintiff is entitled to actual damages, including pecuniary damages, mental anguish or emotional pain and suffering, inconvenience, and loss of enjoyment of life in the past and in the future, and such other and further relief to which Plaintiff is entitled because of the actions and/or omissions complained of herein.

## VI.

## JURY DEMAND

33. Plaintiff respectfully requests a jury trial.

## VII.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendant be cited to appear, and, that Plaintiff be awarded judgment against Defendant for

PLAINTIFF'S ORIGINAL COMPLAINT

statutory damages, compensatory, punitive and general damages, back pay, front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and post judgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled.

Respectfully submitted,

IWU & ASSOCIATES

**/s/ Marshay Iwu**
Marshay Iwu
State Bar No. 24083204
P.O. Box 851553
Mesquite, Texas 75185-1553
Telephone: (214) 417-2738
Telecopier: (214) 272-3186
marshayiwu@lawyersdemandingjustice.com

**ATTORNEY FOR PLAINTIFF**