IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAMEKA TURNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-0615-N |
| | § | |
| CITY OF DALLAS, TEXAS., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant City of Dallas's ("the City") motion to dismiss filed on June 13, 2023 [12]. Plaintiff Tameka Turner failed to respond to the City's motion to dismiss. The Court concludes that Turner failed to state a claim upon which relief can be granted. Accordingly, the Court grants the motion.

### I. ORIGINS OF THE DISPUTE

This dispute arises out of Plaintiff Tameka Turner's employment with the City as Truck Driver II. Turner began working for the City on May 24, 2021. Pl.'s First Am. Compl. ¶ 9 [10]. Approximately six weeks into her job, Turner got into a verbal altercation with a co-worker named Charles. *Id.* at ¶ 10. Charles allegedly threatened Turner by saying: "I'm going to show you what seniority does. I'm going to have the team lead put you're [sic] a*** with Lalo's group so that Lalo can work the s*** out of you." *Id.*

The next day, Turner's supervisor, Nino, reassigned Turner to Lalo's group, "which [Turner] felt was retaliation and a slap in the face, because Nino did exactly what Charles had warned [Turner] was going to happen." *Id.* at ¶ 12. Throughout this first day on Lalo's

MEMORANDUM OPINION AND ORDER – PAGE 1

team, Turner received contradictory instructions about who she should be working with and what she should be doing, which allegedly resulted in Lalo yelling at her and sending her to Nino. *Id.* at ¶ 14. Nino instructed Turner to return to work, but when Turner returned, her crew had already left. ¶¶ 14-15. Turner asked if she should go home, which Nino responded, "you can go home, but you will not get paid for today." *Id.* ¶ 16. Turner decided to go home. *Id.* Nevertheless, Nino reported Turner to human resources for walking off the job. *Id.* ¶ 17. Despite Turner's protest that she had permission to go home, human resources warned Turner that she can be terminated for walking off the job and if it happened again, it would not be tolerated. *Id.* Additionally human resources told Turner that "Charles would be dealt with" but "that being the only female on an all-male job will cause her to get the short end of the stick." *Id.*

Approximately a month later Charles "called [Turner] a fat slouchy b**** and other derogatory, degrading names" and "told [Turner] he was going to make her lose her job that day." *Id.* at ¶ 18. Turner alleges Charles was directly in her face and she felt threatened and in fear for her life "based on Charles' actions [that] day" and his previously mentioned actions. *Id.* In response, Turner made a complaint against Charles with ethics and human resources. *Id.* at ¶ 19. After these calls Turner had a meeting with Brister[1] and Charles where "Brister told Charles that he had spoken to him before and that he had already received a verbal and the next step would be a write up. Brister told [Turner] that she cannot

---

[1] The complaint provides no context as to Brister's position at Turner's place of employment and the authority he had to make employment decisions regarding Turner and Charles.

MEMORANDUM OPINION AND ORDER – PAGE 2

afford to get a write-up or negative comments, because she was still on probation." *Id.* at 21.

After this meeting, Turner alleges she faced harassment from Charles "nearly daily" in the form of "sexist, offensive remarks and hostile threats," which created a hostile work environment. *Id.* at ¶ 26. Furthermore, Turner alleges she suffered retaliation for her complaints to ethics and human resources when the City terminated her employment after her probationary period was over three months later on November 16, 2021. *Id.* at ¶ 22-23. Last, Turner alleges that the City disciplines men less harshly than herself as the only women, exemplified by the fact that both she and a male co-worker were involved in separate car accidents, and while Turner's wreck was minor, she was investigated, while the man in the much bigger wreck was not investigated. *Id.* at 22. The City filed the present motion to dismiss all claims.

## II. Rule 12(b)(6) Legal Standard

When ruling on a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-plead facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does "not accept as true

MEMORANDUM OPINION AND ORDER – PAGE 3

conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III. THE COURT GRANTS THE MOTION TO DISMISS ALL CLAIMS.

Under Title VII, Turner alleges: (1) race discrimination, (2) gender discrimination, (3) harassment based on gender, creating a hostile work environment, and (4) retaliation. These claims fail because Turner failed to sufficiently plead facts that allow the Court to infer each claim is facially plausible.

#### A. Turner's Race Discrimination and Gender Discrimination Claims

Turner claims the City "followed a policy and practice of discrimination against [her] because of her race, black/African American, and/or gender, female, in violation of Title VII."  Pl.'s First Am. Compl. ¶ 25.  Title VII pronounces it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1).  At the motion to dismiss stage, "a plaintiff need not submit evidence to establish the prima facie case for discrimination," but "she must plead sufficient facts on all of the ultimate elements of the claim to make her case plausible." *Davis v. Tex. Health & Hum.*

MEMORANDUM OPINION AND ORDER – PAGE 4

*Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019) (per curiam) (citing *Chhim v. Univ. of Tex.*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam)); *see also Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (affirming that "the district court applied the correct standard when assessing whether [the plaintiff] adequately pled sufficient facts to establish all the elements of her claims."). To state a claim for discrimination under Title VII, a plaintiff must plead that she: "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

First, Turner fails to plead any facts to make a plausible claim that the City replaced her with a person outside of either protected class in which she belongs. As for a disparate treatment claim, "a plaintiff must allege facts plausibly showing (1) an adverse employment action, (2) taken against a plaintiff because of her protected status*.*" *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502 (5th Cir. 2023) (en banc) (citation omitted, emphasis omitted) (internal quotations omitted). The Fifth Circuit recently provided guidance as to the definition of "adverse employment action" and adopted a more liberal definition to include "hiring, firing, compensation, or the '*terms, conditions, or privileges of employment*.'" *Id.* at 506 (emphasis added). The Fifth Circuit noted "that the statutory phrase, terms, conditions, or privileges of employment, is broad." *Id.* at 503 (internal quotations omitted). And that "this language, while contractual in nature, 'is not limited to economic or tangible discrimination,' and 'it covers more than terms and conditions in the

MEMORANDUM OPINION AND ORDER – PAGE 5

narrow contractual sense.'" *Id.* (internal quotations omitted) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 768 (1998)).

It is without debate that Turner's termination qualifies as an adverse employment action. As for any other adverse employment action, Turner provides only a conclusory pleading that "[t]he discriminatory practices and policies include, but are not limited to, discriminating against Plaintiff in the terms, conditions, and privileges of employment based on her race and gender." Pl.'s Second Am. Compl. ¶ 25. This "formulaic recitation of the elements of a cause of action" does not pass muster of a well pled fact under *Twombly*, and Turner does not allege additional facts that elaborate further on the City's discriminatory practice. 550 U.S. at 555. In fact, the only other well pled fact that could fall under this more liberal definition of adverse employment action would be Turner's reassignment to Lalo's team, but Turner alleges no facts that allow the Court to infer her reassignment was due to her gender or race. *See* Pl.'s First Am. Compl. ¶¶ 9-12.

Focusing on her termination, Turner must plausibly allege facts that suggest "any adverse actions taken *because of*" her sex. *Cicalese*, 924 F.3d at 767 (emphasis in original). To make this causal connection, Turner must allege facts that the City treated "similarly situated employees" of a different sex or race more favorably. *See Raj*, 714 F.3d at 331 (5th Cir. 2013). Turner alleges no facts that similarly situated people of a different race were treated more favorably. As for gender, Turner provides a general allegation that "[m]ale employees such as [Turner]'s co-worker Charles were treated more favorably." Pl.'s First Am. Compl. ¶ 7. But Turner makes no allegations that any of the other workers held the same job, had the same responsibilities, or reported to the same supervisor as

herself. *See Wheel v. BL Development Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) ("To establish disparate treatment, a plaintiff must demonstrate that a 'similarly situated' employee under 'nearly identical' circumstances, was treated differently." (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995))). Turner specifically pled that human resources told her "that being the only female on an all-male job will cause her to get the short end of the stick." Pl.'s First Am. Compl. ¶ 17. But Turner failed to plead to any facts where she received the "short end of the stick." Turner does cite a car wreck incident where she was investigated, whereas a man who had a much bigger car wreck was not investigated. Pl.'s First Am. Compl. ¶ 22. Again, Turner fails to plead facts that the co-worker received treatment under "nearly identical circumstances."[2] For example, did Turner have the same duties and responsibilities as the man? Did they both report to the same supervisor? Was the man also on a probationary period? Were both accidents either preventable or non-preventable? Without more facts regarding the similar qualities between herself and this male comparator, the court must take too far of an inferential leap to allow Turner's gender discrimination claim to survive a motion to

---

[2] *See, e.g. Adams v. Columbia/HCA of New Orleans, Inc.*, 2023 WL 2346241, at *4 (5th Cir. Mar. 3, 2023) (The Court dismissed plaintiff's discrimination claims because plaintiff failed "to point to a would-be comparator that shared a similar history of violating Lakeview's Substance Use Policy on top of existing disciplinary warnings for patient safety and behavioral violations."); *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (Plaintiff had not alleged "that any non-transgender employee with a similar job and supervisor and who engaged in the same conduct as [the plaintiff] received more favorable treatment.") *Mitchell v. Am. Paint Horse Ass'n,* 2019 WL 130447, at *2 (N.D. Tex. Jan. 8, 2019) (The Court explained that the Plaintiff "did not, for example, allege that they had similar experience, qualifications, or disciplinary records, or that they shared the same supervisor or job responsibilities" and without more, having the same title of "director" was not enough to be similarly situated).

MEMORANDUM OPINION AND ORDER – PAGE 7

dismiss. Without an adequate comparator, the complaint does not plead any facts that would permit a reasonable inference that Turner was fired because of her gender. Accordingly, the Court dismisses Turner's race and gender discrimination claims.

### B. Turner's Harassment Claim

Turner alleges that she experienced harassment based on gender, creating a hostile work environment. Pl.'s First Am. Compl. ¶ 26. To establish a hostile work environment claim under Title VII, a plaintiff must prove that he

> (1) belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on [gender]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Turner alleges that her male co-worker, Charles, called her a "fat slouchy b**** and other derogatory, degrading names," and "Charles' sexist and offensive remarks created a hostile work environment." Pl.'s First Am. Compl. ¶¶ 18, 22. Though these comments could implicate Turner's protected status as a female, Turner does not state how such an "offensive remark" constituted discrimination because of sex, as opposed to merely a rude remark with a sexual connotation. *See Oncale v. Sundowner Offshore Servs.*, Inc., 523 U.S. 75, 81 (1998) (for actionable sexual harassment, plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex").

Second, even if the above remarks constituted discrimination because of sex, Turner's hostile work environment claim also fails because the alleged harassment was not severe or pervasive enough to alter the terms and conditions of her employment. Sexual harassment under Title VII is actionable "only if it is 'so severe or pervasive' as to alter the conditions of [the victim's] employment and create an abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (quoting *Faragher,* 524 U.S. at 786 (1998)). A "recurring point" in Supreme Court opinions is that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 271 (quoting *Faragher*, 524 U.S. at 788). Thus, "while an isolated incident—reflecting conduct that is not pervasive or frequent—may be sufficiently severe to constitute sexual harassment, it must be 'extremely serious' in order to 'amount to discriminatory changes in the terms and conditions of employment.'" *Paul v. Northrop Grumman Ship Systems*, 309 F. App'x 825, 828 (5th Cir. 2009) (quoting *Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007)). Though Turner references "all the disrespectful remarks and harassment" from Charles, she provides no additional examples or occurrences beyond the "fat slouchy b****" insult. Though this Court does not take lightly the use of this kind of profane language towards a female co-worker, the alleged incident does not compare to other shocking, more egregious actions and comments that have been

held insufficiently severe or pervasive to alter terms, conditions, or privileges of employment.³

Even if Turner sufficiently pled the severity or pervasiveness of the alleged harassment, the complaint alleges facts that show that her employer took prompt, remedial action. After Turner's altercation with Charles, they had a meeting with "Brister" who "told Charles that he had spoken to him before and that he had already received a verbal and next step was a write-up." Pl.'s First Am. Compl. ¶ 21. Turner generally alleges the "[d]efendant did not remedy Charles' actions" and that she "was subjected to… near daily sexist, offensive remarks and hostile threats," but provides no factual support for this allegation. Pl.'s First Am. Compl. ¶¶ 22, 26. In addition, Turner does not plead any facts that her employer knew or should have known that Charles's, or any other co-worker's, harassing remarks, continued after this meeting or that her employer did not take remedial action if it did have such knowledge. Without more facts, the Court is unable to infer that Turner can meet her initial burden to establish the prima facie case for a claim of harassment base on gender creating a hostile work environment. Accordingly, the Court dismisses Turner's hostile work environment claim.

---

³ *See, e.g.*, *Wilson v. Republic Nat'l Indus. of Tex., LP*, 2019 WL 3859666, at *4 (N.D. Tex. Aug. 16, 2019) (holding that three distinct incidents occurring over three months, including comments made insinuating plaintiff was a prostitute, though humiliating and inappropriate, were not adequate to create a sexually hostile work environment); *Young v. Hous. Lighting and Power*, 11 F. Supp. 2d 921, 932-33 (S.D. Tex. 1998) (an employment atmosphere that included sexual jokes, references that women were promoted due to sexual relationships, employees talking about their sex lives, jokes degrading women, sexually explicit posters at watch stations, and other anti-female behavior did not rise to the level required to establish a hostile work environment).

MEMORANDUM OPINION AND ORDER – PAGE 10

### C. Turner's Retaliation Claim

Turner claims the City retaliated against her for reporting her alleged harassment in violation of Title VII. "Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a complaint of discrimination." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002) (citing 42 U.S.C. § 2000e–3(a)). As with discrimination, "a plaintiff must allege facts going to all of the ultimate elements of a prima facie case of retaliation. *Berrios v. Miller*, 2023 WL 5246351, at *8 (W.D. Tex. Aug. 15, 2023)

To establish a prima facie claim of retaliation, a plaintiff must establish "(1) [s]he engaged in an activity protected by Title VII; (2) [s]he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). An employee engages in a protected activity when he "has opposed any practice made an unlawful employment practice by [Title VII]" or "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.A. § 2000e-3(a).

The City contends that Turner cannot meet the first and third elements of her prima facie case. But "[a]n employee that files an internal complaint of discrimination engages in a protected activity." *Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001)). Turner alleges she "suffered retaliation based on her complaints to ethics and human resources for all of the sexist, offensive, and disrespectful remarks against [her] based on

MEMORANDUM OPINION AND ORDER – PAGE 11

her being the only woman on the team and the constant harassment from Charles." Pl.'s First Am. Compl. ¶ 22. While Turner did not file a response to the City's motion to dismiss, construing the pleadings in the light most favorable to Turner, the Court notes Turner engaged in conduct that could constitute protected activity because she made an internal complaint regarding the sexist harassment she received by being the only female on an all male team. However, Turner cannot meet the causation element.

Assuming Turner's complaints to ethics and human resources is a protected activity, the Court holds Turner alleges insufficient facts to show causation. Courts recognize many ways a plaintiff can show circumstantial causation. *See, e.g., Robinson v. Jackson State Univ.*, 714 F. App'x 354, 361 (5th Cir. 2017) ("[T]emporal proximity, specific conversations with knowledgeable colleagues, changed decisionmaker behavior following complaints, pretext, and parallel outcomes for similarly-situated employees—are among the prototypical circumstantial indicators of . . . causation . . . ."); *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 653 (N.D. Tex. 2019) ("Evidence for a causal connection includes: temporal proximity between a protected act and adverse employment action; an employment record that does not support the adverse action; and an employer's departure from typical policies and procedures."). Three months passed between Turner's protected activity and her termination, but temporal proximity alone often is not enough to show causation for a retaliation claim unless the events are "very close." *Clark Cnty. Sch. Dist.*, 532 U.S. at 273 (2001) (internal citations omitted) (citing cases where three-to-four-month periods were insufficient on their own for summary judgement). But this is not one of those very close cases. *See Garvin*, 391 F. Supp. at 653 (N.D. Tex. 2019) (In a motion to

MEMORANDUM OPINION AND ORDER – PAGE 12

dismiss, "[t]emporal proximity alone may suffice when the acts are separated by weeks, but a gap of five months is not sufficient without other evidence of retaliation."); *see also Ajao v. Bed Bath and Beyond Inc*., 265 F. App'x 258, 265, 265 (5th Cir. 2008) (holding in a summary judgment that "temporal proximity of four months is not close enough, without additional supporting summary-judgement evidence."). The three-month stretch of time along with no other circumstantial evidence to suggest the protected activity caused her termination prevents the Court from inferring causation.

Turner pled that her employer's reason for her termination "was mere pretext to sanitize the termination." Pl.'s First Am. Compl. ¶ 23. The City alleges Turner was terminated "because she did not pass the six-month probationary period as a new hire." Def.'s Mot. to Dismiss 20. Furthermore, Turner, herself, pled facts like her being reprimanded for "walking off the job," being "disciplined" by the City during her probationary period, and that she was involved in a car accident while on the job, leading to a formal investigation. Pl.'s First Am. Compl. ¶¶ 16-17, 22. With all these facts in mind, the court cannot reasonably infer the City's business reasons to terminate Turner's employment following her probationary period was pretextual. Accordingly, Turner's retaliation claims should be dismissed because she failed to plead sufficient facts to show the requisite causal connection between a protected activity and an adverse action.

## CONCLUSION

For the foregoing reasons, the Court grants the City's motion to dismiss in its entirety. Turner already amended her pleadings once, failed to respond to the Motion to Dismiss, and did not request leave to amend her pleadings. Therefore, the Court finds that

MEMORANDUM OPINION AND ORDER – PAGE 13

allowing Turner the opportunity replead again would be futile. Accordingly, the Court dismisses all claims with prejudice.

Signed December 19, 2023.

_____
David C. Godbey
United States District Judge